### NORTH BRITISH & MERCANTILE INS. CO. v. LUCKY STRIKE OIL & GAS CO.

No. 8946—Opinion Filed June 11, 1918.

(173 Pac. 845.)

1. **Insurance—Fire Insurance — Proofs of Loss.**

In an action upon a policy of fire insurance conditioned that within 60 days after the occurrence of a fire verified proofs of loss must be made to the insurer, in the absence of evidence of such proofs of loss, or of a waiver thereof, a demurrer to the evidence should be sustained.

2. **Same—Proofs of Loss—Waiver.**

In an action on a policy of fire insurance, proof of loss is not waived by an answer setting up other grounds of defense, nor is it waived by a denial of liability by the insurer under the policy sued upon, upon other grounds, unless it is shown by evidence that such liability was so denied by the insurer within the time fixed by the policy for making proof of loss.

3. **Same—Action on Policy—Evidence.**

The evidence in this case carefully examined, and found insufficient to support the judgment rendered.

(Syllabus by Collier, C.)

Error from District Court, Garvin County; F. B. Swank, Judge.

Action by the Lucky Strike Oil & Gas Company against the North British & Mercantile Insurance Company. Verdict and judgment for plaintiff, motion for new trial overruled, and defendants brings error. Reversed and remanded.

Scothorn & McRill, for plaintiff in error.

Blanton & Andrews, for defendant in error.

Opinion by COLLIER, C. The Lucky Strike Oil & Gas Company, on the 6th day of April, 1914, procured a policy of fire insurance, in the sum of $1,000, for a period of one year, from the North British & Mercantile Insurance Company upon certain personal property described in said policy of insurance and located upon an oil and gas lease, which said personal property

was on the —— day of ——, 1914, totally destroyed by fire and this action is brought to recover the said sum of $1,000 and interest thereon from the 1st day of January, 1915.

Hereafter the parties will be designated as they were in the trial court.

The petition is in the usual form for an action upon a policy of insurance, and alleging, among other things:

'That plaintiff has done and performed all conditions and stipulations agreed and contracted by it to be performed under said contract of insurance, that said sum of $1,000 has matured and become due by the terms of said policy of insurance, but that the defendant refused to pay said sum or any part thereof, though often requested to do so."

The defendant demurred to the petition, which demurrer was overruled and excepted to; but the overruling of said demurrer is not assigned as error.

Upon the overruling of the demurrer to the petition, the defendant answered, denying all the allegations of the petition except as admitted in said answer, and admitted the execution and delivery of said policy of insurance to the plaintiff, and that a copy of said policy was attached to the petition in this cause as "Exhibit A," but denies that said policy was in force at the time of the destruction of the property covered by said policy, and tendered a return of the full amount of the premium paid for said policy and set up as a defense that on the 23rd day of July, 1914, the plaintiff, without having indorsed on said policy a waiver of the condition as to incumbering said property by a chattel mortgage, entered into the following contract with the Limbocker Oil Company:

"Witnesseth: For the consideration herein named the said party of the first part has bargained, sold, assigned and transferred, and does hereby bargain, sell, assign and transfer unto the party of the second part, its successors and assigns the following described personal property situated on the Lucky Strike oil and gas lease in section fifteen (15) township three (3) north, range three (3) west in Carter county, state of Okklahoma, to wit:

"One complete derrick, with all appurtenances and equipments belonging thereto: Two 155 bbl. wooden oil tanks, one wagon tank, one water pump, with 'all pipe and connections, well casing as follows: 40 feet of 16-inch pipe; 355 feet of 12-inch pipe; 857 feet of 10-inch pipe; 1205½ feet of 8-inch pipe; 1420 feet of 6-inch pipe. The exact quantity and description of the casing mentioned in this paragraph being shown by the original invoices of all purchases of casing made by said party of the first party, which are by this reference incorporated into this contract and agreement.

"In consideration of the premises the party of the second part hereby agrees to pay, and first party agrees to receive and accept, as full payment of the purchase price therefor, the sum of $2,200.00, payable as follows: $1,000.00 cash at the time of the making of this contract, the receipt of which is hereby acknowledged by party of the first party; $1,200.00, to be paid four months from this date, or as soon as the first party delivers the above-described property to second party.

"And said party of the first part for the consideration aforesaid hereby warrants, covenants and agrees to and with party of the second part, its successors and assigns, that it is the absolute owner of all the personal property before described, free of any encumbrances thereon, and has full right to sell and dispose of the same and hereby warrants its title thereto.

"It is hereby further mutually agreed that for the considerations the second party shall not be required to pay any interest on the deferred payment of $1,200,00. above mentioned, the said first party shall have the free use of all said personal property for the period of four months from this date; that said first party hereby further covenants and agrees that at the expiriation of four months from this date it will deliver to second party at the Lucky Strike oil lease above described all of said personal property in good condition; that all casing shall be removed from wells made ready to be loaded and moved from said premises; and if at the time of delivering said property to second party the amount of casing delivered is less than the quantity thereof hereinabove stated and as stated in said invoices, a deduction shall be made from the $1,200.00 then to be paid by second party of fifty per cent. of the original invoice cost of such quantiry of said casing as first party shall fail to deliver.

"It is hereby further mutually agreed that if first party shall fail to make delivery of said personal property to second party as provided by the terms of this contract, first party shall be liable and shall pay to second party within ten days after date when delivery of said property is required to be made, the sum of $1,000.00 and the second party agrees to accept said sum as full and complete payment and satisfaction of all claims for damages against first party by reason of any breach of this contract."

To which said answer plaintiff replied, admitting the execution of the contract made with the Limbocker Oil Company, and averring facts to show that defendant had waived the condition of the policy as to the necessity of indorsement by the defendant upon

the policy, to authorize the execution of said contract by the plaintiff with Limbocker Oil Company, so as not to vitiate said policy of insurance.

On the trial of the cause the uncontradicted evidence was that the property described in the policy had been destroyed by fire; that the market value of the property insured and destroyed was from $1,400 to $1,600. The policy was introduced in evidence, which policy is the standard Oklahoma form of insurance policy, and contains the following conditions: (1) That within 60 days after the fire the insured shall render to the company a sworn statement of the loss. (2) This entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, shall be void if the subject of insurance be personal property and be or become incumbered by a chattel mortgage. (3) This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if any change other than by the death of an insured takes place in the interest, title, or possession of the said property insured (except change of occupation without increase of hazard), whether by legal process or judgment or by voluntary act of insured or otherwise.

While it is averred in the petition that "plaintiff has done and performed all conditions and stipulations agreed and contracted by it to be performed under said contract of insurance, and that said sum of $1000 has matured and become due by the terms of said policy of insurance, but that the defendant has refused to pay the same or any part thereof, though often requested to do so," there was no evidence offered on the part of the plaintiff tending to show that proof of loss had been made by the plaintiff to the defendant within the 60 days, as required by the policy, or that the denial of liability by the insurance company was made within 60 days after the fire.

There was evidence tending to show a waiver on the part of the defendant of the condition of the policy requiring that a waiver of the execution of a mortgage on the property be given by the company by indorsement on the policy, but under the view we take of the case we deem it unnecessary to recite such evidence.

Upon the conclusion of the evidence the defendant demurred to the evidence, and also moved for a directed verdict, which demurrer and motion were each overruled and separately excepted to. The jury returned a verdict in favor of the plaintiff in the sum of $900, to which the defendant duly excepted, and judgment entered upon the verdict. Timely motion was made for a new trial which was overruled and exception saved, and an appeal to this court perfected.

We are of the opinion that the contract entered into by the plaintiff with the Limbocker Oil Company, insisted upon by the defendant as being a mortgage, was not a mortgage, but was simply an executory contract of sale and was not such contract on the part of the plaintiff as required the permission of the insurance company to execute the same, to be indorsed on the policy, to permit plaintiff to enter into said contract without avoiding the contract of insurance; and that therefore the question of waiver as to the condition of the policy requiring leave to be indorsed on the policy to authorize the execution of a mortgage upon the property without vitiating the insurance need not be considered. In short, the contention of the defendant, "that the failure to have indorsed on said policy leave to execute the contract entered into by the plaintiff with Limbocker Oil Company was a good defense to this action," is not well taken.

The general denial in the answer required the plaintiff, as a condition precedent to recovery, to offer evidence of proof of loss being made as required by the terms of the policy, or a waiver of such proof, and the plaintiff having failed to offer any evidence whatever tending to show that the proof of loss was made within 60 days after the occurrence of the fire as required by the terms of the policy, or that such proof had been waived, the evidence fails to sustain the cause of action, and the demurrer to the evidence and the motion for an instructed verdict were well taken, and the court committed reversible error in overruling the demurrer to the evidence and likewise the motion for an instructed verdict, as the making of proof of loss was not waived by the answer setting up other grounds as a defense to the action, or in denying liability upon the contract of insurance; it not being shown that such denial of liability was made within 60 days after the fire occurred.

In Palatine Ins. Co. v. Lynn, 42 Okla. 486, 141 Pac. 1167, it is held:

"(1) In an action on a fire insurance policy, which provides that in case of loss the insured will give immediate notice to the insurer, and within 60 days thereafter furnish proofs of loss, testimony that such proofs of loss were furnished is necessary in order to establish a cause of action, un-

less 'the making of such proof of loss has' been waived by the insurer.

"(2) A waiver of proofs of loss must be pleaded in the petition in order that the evidence thereof may be admissible at the trial. Such proofs are not waived by an answer setting up other grounds as a defense to the action.

"(3) Where it is alleged in the petition that proofs of loss were furnished as provided in the policy, these allegations are put in issue by a general denial in the answer, and if at the trial no evidence is offered that such proofs have been furnished, there is a failure of proof, and a demurrer to the evidence is well taken on the ground that the testimony is not sufficient to support a judgment against the insurer, and the motion for an instructed verdict is likewise well taken."

The holding in Palatine Ins. Co. v. Lynn, supra, finds support in Westchester Ins. Co. v. Coverdale, 9 Kan. App. 651, 58 Pac. 1029; Smith v. State Ins. Co., 64 Iowa, 716, 21 N. W. 145; Lane v. St. Paul Fire & Marine Ins. Co., 50 Minn. 227, 52 N. W. 649, 17 L. R. A. 197.

In Phenix Ins. Co. of Brooklyn, N. Y., v. Kerr, 129 Fed. 727, 64 C. C. A. 255, 66 L. R. A. 569, it is held:

"A distinct denial by an insurance company of liability under a policy after the loss, and within the time prescribed for the proofs, upon the ground that there was no contract of insurance, is a waiver of proofs of loss."

In the body of the opinion it is said:

"The policy required the insured to furnish proofs of loss within 60 days after the fire. A distinct denial by an insurance company of liability under a policy after a loss, and within the time prescribed by the proofs, upon the ground that there was no contract of insurance, is a waiver of proofs of loss"—citing Tayloe v. Ins. Co., 9 How. 390, 13 L. Ed. 187; Knickerbocker Life Ins. Co. v. Pendleton, 112 U. S. 696, 5 Sup. Ct. 314, 28 L. Ed. 866.

In Merchants' Ins. Co. of New Orleans v. Nowlin (Tex. Civ. App.) 56 S. W. 198, it is held:

"A denial of liability upon a policy made by an insurance company to a third party, within the period prescribed for making proofs of loss, will, if it comes to the knowledge of the insured, operate as a waiver of proofs of loss."

In the body of the opinion it is said:

"We are of opinion that a denial of liability to others within the period prescribed for making the proofs would, if it came to the knowledge of the insured, be as ef-

fectual a waiver as if made directly to him."

In 19 Cyc. p. 871 (III), it is said:

"Declarations in behalf of the company denying liability under the policy will not constitute a waiver as to the insured, unless such denial is within the period prescribed for making proof comes to the knowledge of the insured."

There is no evidence tending to show that the defendant within 60 days after the fire occurred denied liability, and it is not so pleaded in the petition, or proved by evidence, and therefore the waiver of proof of loss by such denial is not shown, and there being no evidence that proof of loss was made, or waived, within the time prescribed by the policy, the plaintiff failed to make out its case.

In St. Paul Fire Ins. Co. v. Mittendorf, 24 Okla. 651, 104 Pac. 354, 28 L. R. A. (N. S.) 651, it is held:

"In an action on an insurance policy, the plaintiff must allege and prove a compliance with the conditions precedent in the policy, or a waiver thereof."

In view of the fact that the failure of proof of loss in this instance may have resulted from oversight, and believing that the insured should have an opportunity to show, if it can, a compliance with the provision of the policy as to proof of loss, the judgment appealed from is reversed and remanded.

By the Court: It is so ordered.