GENERAL ACCIDENT FIRE & LIFE AS-
SUR. CORPORATION, Limited, v.
DICKINSON et al.

DICKINSON et al. v. GENERAL ACCIDENT
FIRE & LIFE ASSUR. CORPORATION,
LIMITED, OF PERTH, SCOTLAND.
Civil Action No. 4287.

District Court, N. D. California, N. D.

June 4, 1945.

Van Dyke & Harris, of Sacramento, Cal., for plaintiff.

J. Oscar Goldstein, of Chico, Cal., Erling S. Norby, of Marysville, Cal., and Geis & Hogle, of Willows, Cal., for defendants.

WELSH, District Judge.

Declaratory relief was sought by plaintiff with reference to its rights and legal relations with respect to a policy of automobile insurance wherein defendant, L. K. Fereva, doing business as Fereva Chevrolet Company, was named insured. Defendants, Charles Gromer Dickinson, Doris May

Dickinson and William Kemp, were named as such by reason of injuries received in an automobile accident involving the automobile tow truck covered by said policy.

A jury rendered verdicts in favor of the defendants. Counsel for all parties conducted the cause upon the theory that, on account of the equitable origin of estoppel, which was raised in connection with waiver, the jury's verdicts were advisory. The Court, in view thereof, determined not to follow such advisory verdicts and made findings and entered judgment in favor of plaintiff.

An appeal was taken wherein the Circuit Court of Appeals decided that the action was purely at law, that the verdicts were binding on the Court, and that judgment thereupon should be entered. 9 Cir., 147 F.2d 396. Such judgment was entered accordingly.

Plaintiff thereafter made a motion for a new trial, which was exhaustively argued and briefed. This Court is now placed in the position of determining whether or not the verdicts were supported by the evidence and whether plaintiff is entitled to a new trial upon any of the grounds set forth in its notice of motion pursuant to Section 657 of the California Code of Civil Procedure.

Plaintiff's arguments are based mainly upon insufficiency of the evidence and errors in law occurring at the trial.

Findings herein were filed on the 24th day of September, 1942. Finding 14 reads in part: "in said policy of insurance hereinabove referred to as Exhibit 'A', it was provided in condition number 7 thereof as follows: 'Notice of Accident—Claim or Suit. Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the corporation or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.' "

With respect to this requirement of written notice, said Finding 14 also specified: "that upon the occurrence of the accident referred to herein, namely on February 25, 1940, written notice was not given by said L. K. Fereva, the assured under said policy of insurance, or on behalf of said insured, to the plaintiff or any of its authorized agents as soon as practicable; that no notice whatever was given to plaintiff prior to April 26, 1940."

So far as notice of any kind to plaintiff, as insurer, was concerned, said Finding 14 shows: "that prior to said April 26, 1940, no notice was given by said L. K. Fereva to plaintiff in writing or otherwise containing particulars sufficient to identify the insured, or reasonably obtainable information respecting the time, place and circumstances of the said accident, the names and addresses of the injured and of available witnesses, or any of the said items."

On the question of waiver and estoppel, said Finding 14 read: "the court further finds that there was no waiver or change made or effected in any part of the said policy of insurance and that the plaintiff is not estopped from asserting its rights herein under the terms of said policy, and that no terms of the said policy are or have been waived or changed by any course of conduct pursued by the plaintiff herein."

This Court, having so found at the conclusion of the trial, when the evidence was freshly in mind, is constrained to decide now that plaintiff is entitled to a new trial.

After hearing the evidence, observing the witnesses on the stand, and being fully advised in the premises, this Court not only determined not to render a judgment pursuant to the verdicts of the jury, but, subsequently, on further consideration, denied the motion of defendants for a new trial. It thereby held that the verdicts were not supported by the evidence. It still is persuaded that the evidence preponderated in favor of plaintiff.

■ The learned Judge Curtis D. Wilbur in his concurring opinion in Dickinson v. General Accident F. & L. Assur. Corp., 9 Cir., 147 F.2d 396, 398, recognized "it was admitted that no timely written notice was given." It was, therefore, not a compliance with the terms of the insurance contract. The evidence by which defendants sought to establish a waiver of the requirement of notice was neither impressive nor satisfactory.

Certain testimony was admitted over objection during the trial. Inasmuch as the Court concluded not to accept the verdicts of the jury, it has not heretofore been necessary to comment on such rulings.

In view of the fact that the Circuit Court of Appeals ordered this Court to en-

ter judgment pursuant to the verdicts, this Court has re-examined the transcript and given consideration to the points urged by plaintiff in connection with the admission of said testimony, which has to do mainly with alleged conversations of Mr. and Mrs. Fereva purporting to relate to reporting the happening of the accident to plaintiff. No authorized representative of plaintiff insurance company was present at such conversations.

■ The Court is not satisfied that the claimed notification of the accident to Mr. Urquhart was sufficient even if written notice had been waived. The alleged conversation was at best indefinite and inadequate so far as conveying to the plaintiff company any information on which it could base an investigation. None of the particulars of the accident were purported to have been given. No mention was made of time, place, circumstances or parties involved in the accident, or witnesses thereto.

■ The policy required that particulars of the accident be given. Nothing less than the giving thereof would satisfy the terms of the policy. Standard Life & Accident Ins. Co. v. Strong, 13 Ind.App. 315, 41 N.E. 604; Stephenson v. Bankers' Life Ass'n, 108 Iowa 637, 79 N.W. 459.

Mr. Fereva's own statement as to what he said to Mr. Urquhart was (Vol. III, Reporter's Transc., p. 159, line 19, to p. 160, line 3):

"A. Why, when I went out to meet Mr. Urquhart, why, we passed the time of day; then I said, 'Bob, I want to report a little crackup I had down the highway the other morning with my tow car.' I said, 'I was called out in the morning to go out to pull a car out of the ditch, and while I was towing the car out of the ditch another car ran into the car we were towing out. There were several people injured; they were scratched and bruised, but nothing serious.' I think that is about the extent of our conversation.

"Q. Then what happened as you were talking to him? A. Why, as it happened, that day my service manager was off—in other words, my men alternated; each man had a day off—and I worked on Sunday, and I was very busy taking my service man's place, and customers came in, and I left Mr. Urquhart standing in front of the building to wait on the customers."

Mr. Fereva, on cross-examination, testified substantially to the same effect (Reporter's Transc., Vol. III, p. 166, line 23, to p. 168, line 28):

He admitted that he did not tell Mr. Urquhart to whom the accident happened (p. 167, line 30); where the accident happened (p. 168, lines 3 and 4); not even on what highway (p. 168, line 11).

He also admitted that Mr. Urquhart made no reply to him, and that he had known for some fourteen years that Mr. Urquhart was a very deaf man (p. 168, lines 25 to 28).

It was, therefore, entirely possible that Mr. Urquhart did not even hear this conversation which Mr. Fereva claims to have had with him.

That Mr. Urquhart was hard of hearing was evident to this Court when that witness was on the stand. The record itself shows that when counsel for defendants Dickinson and Kemp began questioning him the following transpired (Reporter's Transc., Vol. III, p. 132, lines 4 to 6):

"Mr. Goldstein: Q. I guess I will have to come close to you, Mr. Urquhart. I have never spoken to you before. Can you hear me now? A. Well, slightly; you better come closer."

It is well known that Mr. Goldstein has an exceptionally forceful and clear manner of speaking in courtrooms.

Furthermore, Mr. Urquhart directly denied that he was so notified by Mr. Fereva of the happening of this accident (Reporter's Transcript, Vol. III, p. 151, line 29 to p. 152, line 6).

This Court was therefore not satisfied that notice as required by the policy was proven to have been communicated to the plaintiff company.

■ Error was also committed in permitting the witness Bessie K. Fereva to testify as follows:

"Q. What did you do, Mrs. Fereva, following that accident on February 25, 1940, in connection with making any phone call to Mr. Urquhart, or report to him? A. I couldn't say the exact time; within a week or thereabouts I asked Mr. Fereva if I should phone. When I asked him if I should phone to Mr. Urquhart, or we should phone to Mr. Urquhart and report the accident, I will use his own words: He said,

'Bob was in the other day'—'Bob' meaning Mr. Urquhart—'and I reported it to him when he was here'."

Said testimony should have been stricken out on plaintiff's motion.

■ Similar error was committed in permitting the witness Charles Gromer Dickinson to testify, and not striking out his testimony, as follows:

"Q. When you went down to get the car, as you told the jury, in the period of between five and twelve days after the 25th day of February, 1940, did you have a conversation with Mr. Fereva? A. Yes, sir.

"Q. Will you please state what the conversation was? A. Well, I went down to see Mr. Fereva. I told him my wife was very seriously injured, and asked him what he was going to do about it. He told me that the insurance company had my car tied up there, and was taking care of it, and everything was going to be taken care of." (Tr. 188, 189.)

■ "A motion for new trial on the ground that the verdict is not sustained by the evidence is addressed to the sound discretion of the trial court." Aetna Casualty & Surety Co. v. Reliable Auto Tire Co., 8 Cir., 58 F.2d 100, 104; and in respect to sufficiency of the evidence on disputed matters of fact "is addressed to him as the thirteenth juror." McBride v. Neal, 7 Cir., 214 F. 966, 968.

■ As this court is of opinion that the verdicts were against the clear weight of the evidence, it is deemed duty bound to set aside said verdicts by granting a new trial. Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352.

As was said by Mr. Justice Shaw of the California Supreme Court in his classic opinion in Green v. Soule, 145 Cal. 96, 102, 78 P. 337, 340: "We frequently have cause to believe that the judges of the superior court are too reluctant to exercise their power of granting a new trial for insufficiency of the evidence, and too much inclined to acquiesce in a verdict of the jury which does not meet with their own approval. There is a clear and obvious distinction between the duty of a trial court and the duty of an appellate court with respect to the decision of such questions,

and it is well established by the decisions of this court. The trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it. 'Where the decision is against the weight of the evidence, it is the duty of that court to grant a new trial.' "

■ This view has been repeatedly reiterated by the Supreme Court and the District Courts of Appeal of the State of California. The Supreme Court recently stated in Re Green's Estate, 154 P.2d 692, that a trial court does not abuse its discretion in granting a new trial for insufficiency of evidence where there is a conflict in the evidence or where there is any evidence which would support a judgment in favor of the moving party.

■ The District Court of Appeal stated in Johnson v. McRee, 152 P.2d 526, 529: "The trial judge exercises a broad discretion upon motion for new trial to set aside a verdict which he believes to be against the weight of the evidence."

■ Said court summarized the situation as recently as November, 1944, in Grover v. Sharp, 153 P.2d 83, 84: "It is thoroughly settled in California that a trial judge in passing on a motion for a new trial is not bound by conflicts in the evidence; that in fact he sits as a thirteenth juror with the duty resting on him of reviewing the evidence and passing on its sufficiency; that if he is dissatisfied with the verdict and concludes that it has resulted in a miscarriage of justice it becomes his duty to grant the motion." This Court, so sitting as a thirteenth juror, has reviewed the evidence, is dissatisfied with the verdicts and concluded that they have resulted in a miscarriage of justice.

It is therefore hereby ordered that the motion and application of plaintiff herein for a new trial be granted, and that the verdicts of the jury be vacated and a new trial had on all issues, for the following causes materially affecting the substantial rights of plaintiff, to-wit: Insufficiency of the evidence to justify the verdicts, and that said verdicts are, and each of them is, against law; and errors in law occurring at the trial and excepted to by plaintiff.